T. K. NATHANIEL *vs.* S. K. PUA and T. P. SPENCER.

INJUNCTION. BEFORE DOLE, J.

DECISION RENDERED SEPTEMBER 23, 1890. NOT HITHERTO REPORTED.

A copyright is not infringed where the extracts are trifling, or where the resemblance does not amount to substantial identity.

DECISION OF DOLE, J.

The plaintiff shows that he is the author and owner of a pamphlet entitled, "Ka Buke Moolelo o Hon. Robert William Wilikoki" (The History of Hon. Robert William Wilcox) and that the same has been duly copyrighted and published in this

country; that he began to offer the work for sale about two months ago at two dollars a copy; that about a month thereafter the defendants published and placed on the market a pamphlet which the plaintiff claims to be an infringement of his copyright and to have caused him great damage in diminishing the sale of his work. The title of the defendants' pamphlet is, "Duke Hao o Hawaii a me na Moolelo Pakui," (Iron Duke of Hawaii and appended stories.)

The plaintiff sold some three hundred copies of his pamphlet up to the time the defendants' work appeared, which was sold for seventy-five cents a copy, after which time, in consequence of the competition thereby created, he was compelled to put down the price of his book to one dollar a copy, and even at that price has been able only to dispose of about fifty copies.

The plaintiff pointed out thirteen or fourteen passages in the defendants' book which he claimed were borrowed from his work and illegally used in the preparation of theirs. At the close of the plaintiff's evidence, the defendants' counsel moved that the bill be dismissed on the ground that a *prima facie* case had not been made out. He also made the point that the copyright notice in plaintiff's book was not according to law and did not protect him.

Several of the alleged piracies purport to be translations of public documents, such as His Majesty's letter to the Minister of Finance, and the Marshal's proclamation to Government employees to report for duty during the insurrection of July 30th, 1889. It is admitted that these documents were published in the newspapers of Honolulu immediately after the insurrection; the plaintiff therefore cannot claim the exclusive right to the use of them in their original form, though he might to his own translation of them; a comparison of the translations, however, in the two works shows conclusively that those in the defendants' books are not transcripts of those published by the plaintiff, but are original translations. A third document, claimed by the plaintiff to have been copied from his work, is a letter written by R. W. Wilcox to the King on the morning of the 30th of July, 1889, but as the plaintiff's book shows that the

contents of this letter were given in evidence in the trial of Loomens for treason, by R. W. Wilcox, who was a witness in that case, it does not appear how it became the exclusive property of the plaintiff after having been thus given, in a certain sense, to the public.

Of the remainder of the alleged piracies, the greater number are mere brief statements of well known dates, facts and proper names which have a necessary similarity to the statement of the same matters in the plaintiff's book, simply because they refer to the same matters; they are all things of public notoriety in which an exclusive right cannot be claimed without a showing of some circumstances in collecting and arranging them, which might be the basis of a title, but no such circumstances are shown. There is, however, a passage in defendants' book which is claimed by the plaintiff to be a piracy, which tends perhaps more to support the complaint than any of the other passages which have been pointed out. This extract from the Duke Hao, the defendants' book, is as follows:

"O na Kuhina o ka Moi, ua malama ae lakou i ka halawai Aha Kuhina maloko o ka Hale Hookolokolo Hoomalu o Honoulu nei me na Elele Kanikela o na Aupuni e. Ua hooholo ia ma ia halawai ana, o ke Kuhina Waiwai S. M. Damon ka mea nana e lawe aku i ka olelo kauoha o ia halawai, e noi aku ia Wilikoki ma ka inoa o ke Aupuni Hawaii no ka malama ana i ka maluhia—e haawi pio mai oia a me kona mau koa i ke Aupuni mamua o ka lawelawe ia ana o kekahi hana."

The passage in plaintiff's book of which the foregoing extract is claimed to be a piracy is as follows:

"Ua halawai iho la ka Aha Kuhina o ke Aupuni, na Kuhina Noho ó na Aina E, na Kanikela a me ke Kapena o ka moku kaua Adamu, a ua hooholo iho la lakou e hoouna aku ia S. M. Damon e hele a noi aku ia Wilikoki e haawi pio mai iaia a me kona poe."

The translations of these two extracts are as follows:

From the Duke Hao o Hawaii:

"The Ministers of the King held a Cabinet meeting in the Police Court House of Honolulu, with the diplomatic represen-

tatives of foreign governments. It was agreed at the meeting that S. M. Damon, the Minister of Finance, should be the one to convey the command of the meeting and ask Wilcox in the name of the Hawaiian Government that he would, for the preservation of order, give himself and his soldiers up to the Government as prisoners before other measures should be employed."

From Buke Moolelo o Hon. Robert William Wilikoki:

"The Cabinet Council of the Government met the resident Ministers of foreign lands, the Consuls and the Captain of the war-ship Adams, and they decided to send S. M. Damon to go and ask Wilcox to give himself and his men up as prisoners."

We find in these extracts two descriptions of the same event, which was one of public notoriety. The defendants had as much right to prepare and publish an account of it as the plaintiff. Their description contains no intrinsic evidence of being a copy of the similar description in the other book. True, it may have been borrowed from the plaintiff's work and so changed as to destroy the evidences of its origin, but there is no evidence of this, and no particular necessity for it on the part of the defendants, as the information could in all probability have been obtained from newspapers and persons present on the occasion referred to. Moreover, the passage, standing alone, is not of sufficient importance, even if it is a piracy, to support the plaintiff's contention as to his damage in consequence of it, as well as of the other alleged piracies, which, as I have already remarked, do not support the bill of complaint. "Where the extracts are trifling, the Court will not interfere." *Bell vs. Whitehead*, 17 L. J., 141, and Curtis on Copyright, 324.

I have compared the two books in other particulars than those pointed out by the plaintiff, and do not find anything in the arrangement of the defendants' book which is suggestive of the arrangement of the other, nor have I come across any features besides those already referred to which appear to have been borrowed from it. The defendants certainly have committed no greater piracy than the obvious theft of the popular title of the great. Englishman, involved in the name they have given to their work.

Judge Story, in *Emerson vs. Davies*, 3 Story, 768, says: "It is not sufficient to show that it (defendants' book) may have been suggested by Emerson's, or that some parts and pages of it have resemblance in methods and details and illustrations to Emerson's. It must be further shown that the resemblances in those parts and pages are so close, so full, so uniform, so striking, as fairly to lead to the conclusion that the one is a substantial copy of the other, or mainly borrowed from it. In short, that there is substantial identity between them. A copy is one thing, an imitation or resemblance another." By this test, I do not find that the plaintiff has made such a showing as to call for a further defence on the part of the defendants.

I therefore allow the defendants' motion and will sign an order for the dismissal of the bill of complaint. As this disposes of the case, I need not consider the other point.

*W. C. Achi*, for plaintiff.

*A. Rosa*, for defendant.